## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TEISHA BURKE<br>935 South Street<br>Greenfield, Ohio 45123, | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| HONEYWELL INTERNATIONAL INC.<br>475 E High Street<br>London, Ohio 43140 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>Honeywell International Inc.<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Teisha Burke, by and through undersigned counsel, as her Complaint against Defendant Honeywell International Inc. ("Honeywell"), states and avers the following:

### PARTIES AND VENUE

1. Burke is a resident of the village of Greenfield, Highland County, Ohio.

2. At all times herein, Burke was acting in the course and scope of her employment.

3. Honeywell is a foreign corporation that does business at 475 E High Street, London, Madison County, Ohio 43140 ("London Location").

4. Honeywell is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Burke is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e.

6. All material events alleged in this Complaint occurred in Madison County, Ohio.

7. This Court has supplemental jurisdiction over Burke's state law claims pursuant to 28 U.S.C. § 1367 as Burke's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Burke filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01521 against Honeywell ("Burke EEOC Charge").

10. On or about November 23, 2021, the EEOC issued a Notice of Right to Sue letter to Burke regarding the Burke EEOC Charge.

11. Burke received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Burke has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Burke has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. In or about June 2020, Burke began working for Honeywell.

15. Burke initially worked for Honeywell as a temporary worker.

16. In or about October 2020, Honeywell hired Burke on a permanent basis, as a machine operator.

2

17. Shortly after Burke became a permanent employee, Quinlan Neal began making sexually explicit comments to Burke ("Crass Comments").

18. Neal is an assembly worker for Honeywell.

19. Among the Crass Comments, Neal told Burke that he wanted to take her into an empty trailer at the worksite to have sex with her.

20. Among the Crass Comments, Neal told Burke that he wanted to drink milk from her breasts.

21. In addition to the Crass Comments, Neal grabbed Burke's breasts.

22. Neal made Crass Comments to Burke multiple times a week.

23. Neal's comments, gestures, and physical contact with Burke were severe.

24. Neal's comments, gestures, and physical contact with Burke were pervasive.

25. In or about January 2021, Burke reported the Neal's harassing conduct to her then-supervisor, Rebecca Hover ("First Report of Harassment").

26. Honeywell has a policy against sexual harassment ("Sexual Harassment Policy").

27. Honeywell's Sexual Harassment Policy precludes retaliation against employees who complain about sexual harassment.

28. Alternatively, retaliation against employees who complain about sexual harassment is permitted by Honeywell.

29. Honeywell's Sexual Harassment Policy precludes intimidation against employees who complain about sexual harassment.

30. Alternatively, intimidation against employees who complain about sexual harassment is permitted by Honeywell.

31. Honeywell's Sexual Harassment Policy requires employees to report what they reasonably believe is a violation of the Sexual Harassment Policy.

32. Honeywell's Sexual Harassment Policy precludes retaliation against employees who report a violation of the Sexual Harassment Policy.

33. Alternatively, retaliation against employees who report a violation of the Sexual Harassment Policy is permitted by Honeywell.

34. Honeywell's Sexual Harassment Policy precludes intimidation against employees who report a violation of the Sexual Harassment Policy.

35. Alternatively, intimidation against employees who report a violation of the Sexual Harassment Policy is permitted by Honeywell.

36. Neal's conduct violates the Sexual Harassment Policy.

37. Honeywell has a policy to investigate reports of violations of its Sexual Harassment Policy.

38. An investigation should include interviewing the complainant.

39. An investigation should include interviewing the subject of the complaint.

40. An investigation should include interviewing the subject of the reported discrimination.

41. An investigation should include interviewing witnesses to the reported discrimination.

42. An investigation should include getting a written statement from the complainant.

43. An investigation should include getting a written statement from the subject of the complaint.

44. An investigation should include getting a written statement from the subject of the reported discrimination.

45. In response to Burke's First Report of Harassment, Honeywell did not interview Burke.

46. In response to Burke's First Report of Harassment, Honeywell did not interview Neal.

47. In response to Burke's First Report of Harassment, Honeywell did not interview witnesses.

48. In response to Burke's First Report of Harassment, Honeywell did not get a written statement from Burke.

49. In response to Burke's First Report of Harassment, Honeywell did not get a written statement from Neal.

50. In response to Burke's First Report of Harassment, Honeywell did not get a written statement from witnesses.

51. Honeywell did not investigate Burke's First Report of Harassment.

52. In response to Burke's First Report of Harassment, Honeywell did not give Neal a verbal warning.

53. In response to Burke's First Report of Harassment, Honeywell did not give Neal a written warning.

54. In response to Burke's First Report of Harassment, Honeywell did not give Neal a final warning.

55. In response to Burke's First Report of Harassment, Honeywell did not give Neal a demotion.

56. In response to Burke's First Report of Harassment, Honeywell did not give Neal a suspension.

57. In response to Burke's First Report of Harassment, Honeywell did not terminate Neal's employment.

58. In response to Burke's First Report of Harassment, Honeywell did not discipline Neal at all.

59. After the First Report of Harassment, Neal continued to harass Burke.

60. Honeywell knew about Neal's harassment of Burke.

61. Honeywell did not take reasonable action to stop Neal's harassment of Burke.

62. Honeywell told Neal about the First Report of Discrimination.

63. After the First Report of Discrimination, Quin began to retaliate against Burke.

64. On or about April 27, 2021, Neal pulled up on a forklift behind Burke and sat in the forklift for several minutes, staring at Burke in a menacing fashion ("April 27 Incident").

65. Neal did the April 27 Incident to intimidate Burke.

66. Neal did the April 27 Incident because of Burke's First Report of Harassment.

67. On or about April 27, 2021, Burke reported the April 27 Incident to Honeywell in writing ("April 27 Incident Report").

68. In response to Burke's April 27 Incident Report, Honeywell did not interview Burke.

69. In response to Burke's April 27 Incident Report, Honeywell did not interview Neal.

70. In response to Burke's April 27 Incident Report, Honeywell did not interview witnesses.

71. In response to Burke's April 27 Incident Report, Honeywell did not get a written statement from Burke.

72. In response to Burke's April 27 Incident Report, Honeywell did not get a written statement from witnesses.

73. Honeywell did not investigate Burke's April 27 Incident Report.

74. In response to Burke's April 27 Incident Report, Honeywell did not give Neal a verbal warning.

75. In response to Burke's April 27 Incident Report, Honeywell did not give Neal a written warning.

76. In response to Burke's April 27 Incident Report, Honeywell did not give Neal a final warning.

77. In response to Burke's April 27 Incident Report, Honeywell did not give Neal a demotion.

78. In response to Burke's April 27 Incident Report, Honeywell did not give Neal a suspension.

79. In response to Burke's April 27 Incident Report, Honeywell did not terminate Neal's employment.

80. In response to Burke's April 27 Incident Report, Honeywell did not discipline Neal at all.

81. After the April 27 Incident Report, Neal continued to harass Burke.

82. Honeywell knew about Neal's harassment of Burke.

6

83. On or about June 30, 2021, outside Tim Brown's office, Neal told Burke that she wished she died ("June 30 Comment").

84. Brown was Burke's supervisor.

85. Neal made the June 30 Comment to intimidate Burke.

86. Neal made the June 30 Comment because of the First Report of Harassment.

87. On or about June 30, 2021, Burke submitted an incident report to Honeywell, reporting the June 30 Comment ("June 30 Incident Report").

88. In response to Burke's June 30 Incident Report, Honeywell did not interview Burke.

89. In response to Burke's June 30 Incident Report, Honeywell did not interview Neal.

90. In response to Burke's June 30 Incident Report, Honeywell did not interview witnesses.

91. In response to Burke's June 30 Incident Report, Honeywell did not get a written statement from Burke.

92. In response to Burke's June 30 Incident Report, Honeywell did not get a written statement from Neal.

93. In response to Burke's June 30 Incident Report, Honeywell did not get a written statement from witnesses.

94. Honeywell did not investigate Burke's June 30 Incident Report.

95. In response to Burke's June 30 Incident Report, Honeywell did not give Neal a verbal warning.

96. In response to Burke's June 30 Incident Report, Honeywell did not give Neal a written warning.

97. In response to Burke's June 30 Incident Report, Honeywell did not give Neal a final warning.

98. In response to Burke's June 30 Incident Report, Honeywell did not give Neal a demotion.

99. In response to Burke's June 30 Incident Report, Honeywell did not give Neal a suspension.

100. In response to Burke's June 30 Incident Report, Honeywell did not terminate Neal's employment.

101. In response to Burke's June 30 Incident Report, Honeywell did not discipline Neal at all.

102. After the June 30 Incident Report, Neal continued to harass Burke.

103. Honeywell knew about Neal's harassment of Burke.

104. On or about July 3, 2021, Burke made filed the Burke EEOC Charge, alleging sexual harassment and retaliation.

105. In response to the Burke EEOC Charge, Honeywell did not interview Burke.

106. In response to the Burke EEOC Charge, Honeywell did not interview Neal.

107. In response to the Burke EEOC Charge, Honeywell did not interview witnesses.

108. In response to the Burke EEOC Charge, Honeywell did not get a written statement from Burke.

109. In response to the Burke EEOC Charge, Honeywell did not get a written statement from witnesses.

110. Honeywell did not investigate the Burke EEOC Charge.

111. In response to the Burke EEOC Charge, Honeywell did not give Neal a verbal warning.

112. In response to the Burke EEOC Charge, Honeywell did not give Neal a written warning.

113. In response to the Burke EEOC Charge, Honeywell did not give Neal a final warning.

114. In response to the Burke EEOC Charge, Honeywell did not give Neal a demotion.

115. In response to the Burke EEOC Charge, Honeywell did not give Neal a suspension.

116. In response to the Burke EEOC Charge, Honeywell did not terminate Neal's employment.

117. In response to the Burke EEOC Charge, Honeywell did not discipline Neal at all.

118. After the Burke EEOC Charge, Neal continued to harass Burke.

119. Honeywell knew about Neal's harassment of Burke.

120. After the Burke EEOC Charge, Neal continued to come near Burke intentionally to taunt her ("Continued Taunting").

121. Neal did the Continued Taunting to intimidate Burke.

122. Burke made at least three written reports of the Continued Taunting to Honeywell ("Reports of Taunting").

123. In response to Burke's Reports of Taunting, Honeywell did not interview Burke.

124. In response to Burke's Reports of Taunting, Honeywell did not interview Neal.

125. In response to Burke's Reports of Taunting, Honeywell did not interview witnesses.

126. In response to Burke's Reports of Taunting, Honeywell did not get a written statement from Burke.

127. In response to Burke's Reports of Taunting, Honeywell did not get a written statement from Neal.

128. In response to Burke's Reports of Taunting, Honeywell did not get a written statement from witnesses.

129. Honeywell did not investigate Burke's Reports of Taunting.

130. In response to Burke's Reports of Taunting, Honeywell did not give Neal a verbal warning.

131. In response to Burke's Reports of Taunting, Honeywell did not give Neal a written warning.

132. In response to Burke's Reports of Taunting, Honeywell did not give Neal a final warning.

133. In response to Burke's Reports of Taunting, Honeywell did not give Neal a demotion.

134. In response to Burke's Reports of Taunting, Honeywell did not give Neal a suspension.

135. In response to Burke's Reports of Taunting, Honeywell did not terminate Neal's employment.

136. In response to Burke's Reports of Taunting, Honeywell did not discipline Neal at all.

137. After the Reports of Taunting, Neal continued to harass Burke.

138. Honeywell knew about Neal's harassment of Burke.

139. Neal continues to harass Burke.

140. Neal's conduct has established a hostile work environment.

141. The hostile work environment established by Neal's conduct constitutes an adverse employment action.

142. Neal's retaliatory conduct would make a reasonable person less likely to make reports of harassment.

143. Burke made multiple reports to Honeywell about Neal's conduct.

144. Honeywell has not taken reasonable action to stop Neal's harassing and retaliatory conduct.

145. Honeywell has ratified Neal's conduct by not taking reasonable action to stop it.

146. As a direct and proximate result of Honeywell's conduct, Burke suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

147. Burke restates each and every paragraph of this Complaint as though it were fully restated herein.

148. Burke was subjected to unwelcome sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

149. Honeywell created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcome sexual comments, inappropriate sexual gestures, and sexual advances.

150. As a direct and proximate result of the intimidating, offensive, and hostile environment created and sustained by Honeywell, Burke repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

151. Honeywell's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of Title VII.

152. Neal's sexual harassment of Burke occurred while he was acting in the course and scope of his employment.

153. Burke's supervisor had knowledge of the sexual harassment and failed to take any corrective or remedial action.

154. As a direct and proximate result of Honeywell's conduct, Burke suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT II: SEXUAL HARASSMENT IN VIOLATION OF R.C. § 4112.01 *et seq.***

155. Burke restates each and every paragraph of this Complaint as though it were fully restated herein.

156. Burke was subjected to unwelcome sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

157. Honeywell created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcome sexual comments, inappropriate sexual gestures, and sexual advances.

158. As a direct and proximate result of the intimidating, offensive, and hostile environment created and sustained by Honeywell, Burke repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

159. Honeywell's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. § 4112.02(A).

160. Neal's sexual harassment of Burke occurred while he was acting in the course and scope of his employment.

161. Burke's supervisor had knowledge of the sexual harassment and failed to take any corrective or remedial action.

162. As a direct and proximate result of Honeywell's conduct, Burke suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII

163. Burke restates each and every prior paragraph of this complaint, as if it were fully restated herein.

164. As a result of Honeywell's discriminatory conduct described above, Burke complained about the harassment she was experiencing.

165. Subsequent to Burke's reporting of sexual harassment to Honeywell, Neal did the April 27 Incident.

166. Subsequent to Burke's reporting of sexual harassment to Honeywell, Neal made the June 30 Comment.

167. Subsequent to Burke's reporting of sexual harassment to Honeywell, Neal did the Continued Taunting.

168. Honeywell did not take reasonable action to stop Neal's retaliation against Burke.

169. Honeywell's actions were retaliatory in nature based on Burke's opposition to the unlawful discriminatory conduct.

170. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing harassment.

171. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for filing an EEOC charge.

172. As a direct and proximate result of Honeywell's conduct, Burke suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

173. Burke restates each and every prior paragraph of this complaint, as if it were fully restated herein.

174. As a result of Honeywell's discriminatory conduct described above, Burke complained about the harassment she was experiencing.

175. Subsequent to Burke's reporting of sexual harassment to Honeywell, Neal did the April 27 Incident.

176. Subsequent to Burke's reporting of sexual harassment to Honeywell, Neal made the June 30 Comment.

177. Subsequent to Burke's reporting of sexual harassment to Honeywell, Neal did the Continued Taunting.

178. Honeywell did not take reasonable action to stop Neal's retaliation against Burke.

179. Honeywell's actions were retaliatory in nature based on Burke's opposition to the unlawful discriminatory conduct.

180. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

181. As a direct and proximate result of Honeywell's conduct, Burke suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Burke respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Honeywell to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Honeywell to restore Burke to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Burke for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Burke claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Teisha Burke*

## JURY DEMAND

Plaintiff Burke demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)

15